FREDERICK FISHER v. ANN WITHAM ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 30, 1890—Decided February 24, 1890.

While a deed, absolute on its face, executed prior to the act of June 8, 1881,
P. L. 84, may be converted into a mortgage by parol testimony, yet the
evidence must be clear, explicit and unequivocal. It must show an
agreement, in the nature of a defeasance, contemporaneous with the
execution and delivery of the deed: evidence of subsequent admissions
alone is insufficient. The bill filed, in this case, fifteen years after the
date of the deed, and five years after the death of the grantee, was pro-
perly dismissed.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 85 January Term 1890, Sup. Ct.; court below, No. 711
December Term 1886, C. P. No. 3, in Equity.

On February 21, 1887, Frederick Fisher filed a bill in equity
against Ann Witham, Mary A. Witham and Sarah Elizabeth
Stuckert, to compel the defendants, the devisees of Ebenezer
Witham, deceased, to state a true account of plaintiff's indebt-
edness to them, and upon his payment of the indebtedness so
shown, to execute a conveyance to him of a certain property on
Pennsylvania Avenue north of Thompson street, Philadelphia.
Answers having been filed and issue joined, the cause was re-
ferred to *Mr. Sidney G. Fisher*, as master and examiner, who
made a report finding the following facts:

From the bill, answer and proof, the master finds the facts
of this case to be the following:

Frederick Fisher, the complainant, was in the year 1862 the
owner in fee of the two lots of land and the brewery thereon
erected at Pennsylvania avenue and Thompson street, partic-
ularly described by metes and bounds in the first paragraph of
the bill, and which are the subjects of litigation in this case.
In that same year, 1862, the property was put up at sheriff's
sale under a judgment against Frederick Fisher, and bought

in by his attorney for $7,050.  Fisher could not pay the costs, taxes and judgments, and accordingly entered into an agreement with William Wilkins and John G. White to lend him the money for that purpose.

The agreement thus made recited that Wilkins should hold the title of the property until the sum of $2,500, which he had lent Fisher, was satisfied out of the rents and profits or otherwise ; and when so satisfied, he was to convey the property to White, who was to hold it until he had satisfied out of its rents and profits the sum of $1,700 which he had lent Fisher, and also a judgment of $11,000 due from Fisher to the firm of which White was a member.  When White's claims should be satisfied, he was to convey the property back again to Fisher.  A proviso was added to the agreement to the effect that if Wilkins was not paid his money within one year, and White, in three years, from the date of the agreement, November 22, 1862, they should respectively have the right to sell the property at public sale, and, after paying themselves out of the proceeds, return the balance to Fisher.

In accordance with this agreement the sheriff, on November 22, 1862, made a deed of the property to Wilkins.  Wilkins afterwards pressed for a settlement ; and, as Fisher was unable to make it, White furnished the money and Wilkins conveyed the property to him April 3, 1865, in accordance with the agreement.

Wilkins being disposed of, and White now holding the property under the agreement, Fisher, within a little less than two years, to wit, on February 12, 1867, made an additional agreement with White, by which White was given the right to mortgage the property on any terms he saw fit, and also to sell it at private sale with the same effect as under the former agreement at public sale.

There was a mortgage on the property of $11,250 due to one John K. McCurdy, and when McCurdy pressed for payment, White, on March 15, 1867, mortgaged the property to Henry Beckett for $12,000, under the power given him in the last-mentioned agreement, and with the money so obtained paid off McCurdy.

Up to this point, there is no doubt that under the two agreements the title to the property was held by White as security

Statement of Facts.

for the above sum of money, or whatever sum was justly due him from day to day, and that if Fisher paid that sum he would be entitled to a re-conveyance from White; or, if the land was sold at private or public sale under the two agreements, White would be bound to account to Fisher for any balance that remained.

During the next three years the indebtedness was reduced, for we have in evidence a statement of account between Fisher and White's firm, which included the ground-rent paid off, and gave the balance due January 1, 1870, as $11,842.24.

In the year 1870, a new arrangement was made, which caused the present litigation, and is the important point of the case. In that year we find that on August 18th, White conveyed the property to Ebenezer Witham, Fisher's brother-in-law, and the consideration recited in the deed is $9,000. This sum, it will be observed, is less than the debt due White on January 1st of that year, by more than $2,000. The bill avers that the debt due White at that time had been reduced to about $10,000, and that White was willing to accept $1,000 less, for the sake of cash.

The Beckett mortgage of $12,000 still remained due, so that Witham paid for the property $21,000. The Beckett mortgage was paid off by Witham on January 26, 1872.

The deed from White to Witham was absolute on its face, and purported to convey an unconditional fee-simple. On the same day that it was executed, there was executed another deed, from Fisher to Witham, which was also absolute on its face, and purported to convey an unconditional fee-simple.

Witham died June 21, 1882, and by his will admitted to probate June 27, 1882, he devised his estate in equal shares to his wife and two daughters, who are the defendants in this suit, and hold in common the property in controversy. In July, 1883, about a year after the death of Witham, a distraint was made on the property for rent due by Fisher, and after the bailiff's sale, Fisher gave up the keys and surrendered the property, without making any claim of ownership thereto.

It is now claimed by Fisher that these two deeds, made on the same day, and apparently absolute, were intended to create a mortgage; that he and Witham, at the time these deeds were executed, had a parol agreement and understanding with

Opinion of Court below.

each other that the property thus conveyed was to be held as security for the $9,000 paid to White and the $12,000 paid to satisfy the Beckett mortgage, and for other sums which should become due from Fisher to Witham.

—Examining the testimony and citing Todd v. Campbell, 32 Pa. 250; Plumer v. Guthrie, 76 Pa. 441; De France v. De France, 34 Pa. 385; Rhines v. Baird, 41 Pa. 256; Nicolls v. McDonald, 101 Pa. 514; Odenbaugh v. Bradford, 67 Pa. 96; McClurkan v. Thompson, 69 Pa. 305; Kelly v. Thompson, 7 W. 401; Burger v. Dankel, 100 Pa. 113; Kunkle v. Wolfersberger, 6 W. 126, and Harper's App., 64 Pa. 315, the master recommended a decree: 1. That the two deeds both dated August 18, 1870, created a mortgage on the premises described in the bill, and that the plaintiff was entitled to redeem on payment of what was justly due to the defendants. 2. That the matter be referred to a master to state and report an account. 3. That, upon payment or tender to the defendants of the sum found to be due upon such accounting, they should thereupon convey, etc.

To the master's report the defendants filed exceptions. These exceptions having been overruled by the master were renewed on the filing of his report. After argument thereof before the court in banc, the following opinion was filed, Finletter, P. J.:

In 1862, the property in controversy was sold by the sheriff and bid in by the plaintiff's attorney. William Wilkins furnished the purchase money, and received the sheriff's deed.

In 1865, he conveyed to John G. White, who conveyed to Ebenezer Witham, in 1870.

Wilkins and White agreed with the plaintiff in writing to convey the property to him, upon payment of the moneys advanced by them.

The master reports that " the deed from White to Witham was absolute on its face, and purported to convey an unconditional fee-simple. On the same day that it was executed, there was executed another deed from Fisher to Witham, which was also absolute on its face and purported to convey an absolute fee-simple. . . . . There is no evidence of any conversation at the time this transaction took place. The

only other witness of importance was Benjamin F. Hoeckley, the conveyancer, who drew the two absolute deeds. He testified that Witham paid him for drawing them. He could not remember that anything had been said by either Fisher or Witham tending to show that the deeds were intended as a mortgage."

In 1881, Witham gave Fisher a lease, which contained an agreement to sell for a sum equal to what he had paid for the property. He died in 1882, having devised his property to his wife and two daughters, who are the defendants. In 1883 a distraint was made on the premises for rent due by Fisher, and after the constable's sale he surrendered possession.

The master states the question at issue as follows: " It is now claimed by Fisher that these two deeds (to Witham), made on the same day and apparently absolute, were intended to create a mortgage; that he and Witham, at the time these deeds were executed, had a parol agreement and understanding with each other that the property thus conveyed was to be held as security for the $9,000 paid to White and the $12,000 paid to satisfy the Beckett mortgage, and for other sums which should become due from Fisher to Witham."

It is important to keep in view the relations of the parties at the time the several conveyances and contracts were delivered. The sheriff's sale divested all the title which Fisher had in the property, and his only interest was the agreement which he had with Wilkins and White. This affected no one else without notice, and it does not appear that Witham had notice of any kind. When White conveyed to Witham, the property passed without qualification, and freed from any equity which Fisher may have had therein. When he executed his deed, no interest or equity passed with it. It is more than probable that it was required by Witham as in the nature of a quit-claim deed, and to free the title from all possible equities. This is the natural interpretation and effect of the conveyance, and there is nothing in the case to give it further import. If this be so, how can Fisher have any equity, unless it be by subsequent contract, of which there is no evidence?

It will be observed that Witham was in no way connected with the property, or with the transactions of Wilkins, White

and Fisher in relation thereto, until he purchased. It is not apparent, therefore, how he could be responsible for their actions. It is conceded that there is no evidence of an express agreement between him and Fisher when the deeds were delivered, and there is no act of his inconsistent with unqualified ownership. It is not apparent that Fisher, in Witham's lifetime, claimed any legal or equitable interest in the property. By accepting the lease and contract to sell, he disavowed all the rights and claims of an owner. It may not be said that he was ignorant of his rights or the method by which they could be secured. When dealing with Wilkins and White, in the same matter, he obtained written contracts by which his right to purchase was fully established. Why he did not have his alleged agreement with Witham in writing is not explained. This is a significant fact, and, under all circumstances, calculated to throw doubt upon his stale claim.

The title of the defendants rests upon the sheriff's deed to Wilkins, his deed to White, and the deeds from White and Fisher to Witham, and his ownership unquestioned and acknowledged for more than ten years by Fisher, and their undisputed possession for five years longer. To cast doubt upon such a title the evidence should be conclusive. And yet the master reports that all these conveyances, with all their confirmatory facts, were a mortgage, upon evidence which, to say the least of it, is not " clear, explicit, and unequivocal." He has clearly and correctly stated the law as follows: " An absolute deed executed prior to the act of 1881 may be converted into a mortgage by parol proof. But the evidence must be ' clear, explicit, and unequivocal.' It must show an agreement contemporaneous with the execution and delivery of the deed; subsequent admissions alone are not enough."

There is no evidence of a " contemporaneous agreement," or that Witham took the property as a security for a debt due by Fisher, or that Fisher was indebted to him at the time the deeds were delivered. The facts upon which the master relies are: (1) inadequacy of price; (2) a memorandum which shows that the property cost Witham $23,000; (3) declarations of Witham; and (4) an indebtedness by Fisher to Witham.

The evidence of inadequacy of price is valueless. The

memorandum is not inconsistent with unqualified ownership, and shows only that Witham was willing to convey to Fisher without a profit. This is indicated by the provision in the lease to sell for $23,000. If the declarations of Witham had been fully established and were clear and satisfactory, they would have been insufficient, because they were made long after the delivery of the deeds and do not connect themselves with that event. But the witnesses are not trustworthy, nor do they testify to facts which " clearly, explicitly, and unequivocally " show that the deeds were intended as a security for a debt, or that at the time of their execution there was any agreement between Fisher and Witham in relation to the property conveyed. And there is no evidence that Fisher was then indebted to Witham.

But, aside from all this, and conceding that the master has deduced proper conclusions from the law and the evidence as to everything which occurred before the delivery of the lease to Fisher, in 1881, we think that instrument conclusive against the claim of the plaintiff. The master, without evidence, has assumed that there was an indebtedness by Fisher to Witham, at the time of the delivery of the deeds, and this assumption pervades his whole report and leads him to wrong conclusions. He regards the contract to sell as vitiating the effect of the lease. In our judgment it makes it stronger, and is an additional admission by the plaintiff that Witham was the owner without qualification of any kind.

We are disposed to consider this instrument as the concentre of all that preceded, and as conclusive of the rights of the parties at the time of its execution, no matter what they may have been before. It clearly defines their relative positions to be that of landlord and tenant, and owner and contracting purchaser. This was the time for Fisher to assert his rights, if any he had, and certainly when dispossessed, he might be expected to give some indication of his claim. He did not commence proceedings until five years after the death of Witham, and this delay is unexplained. It is easier to work up a claim against a dead man's estate, than to confront him when living.

The exceptions are sustained, the report set aside, and the bill dismissed with costs.

Opinion of the Court.

—A final decree having been entered sustaining the defendants' exceptions and dismissing the bill, the plaintiff took this appeal specifying the sustaining of the several exceptions and the dismissal of the bill for error.

Mr. *Charles Biddle* (with him Mr. *Walter George Smith*), for the appellant.

Counsel cited: Todd v. Campbell, 32 Pa. 250; Umbenhower v. Miller, 101 Pa. 71; De France v. De France, 34 Pa. 385; Rhines v. Baird, 41 Pa. 256; Flaherty's App., 1 W. N. 166; Odenbaugh v. Bradford, 67 Pa. 104; Kunkle v. Wolfersberger, 6 W. 126.

Mr. *Samuel Gormley* (with him Mr. *Snare*), for the appellees.

Counsel cited, other than cases cited for appellant: Porter v. Mayfield, 21 Pa. 263; Rankin v. Simpson, 19 Pa. 471; Pancake v. Cauffman, 114 Pa. 113; Rowand v. Finney, 96 Pa. 192; Nicolls v. McDonald, 101 Pa. 514; Lance's App., 112 Pa. 456; Burger v. Dankel, 100 Pa. 113; Kimmel v. Smith, 117 Pa. 183; Spencer v. Colt, 89 Pa. 314.

PER CURIAM:

While a deed, absolute on its face, executed prior to the act of 1881, may be converted into a mortgage by parol proof, it is well settled that the evidence must be clear, explicit, and unequivocal. It must show an agreement, in the nature of a defeasance, contemporaneous with the execution and delivery of the deed. Subsequent admissions alone are not sufficient. The evidence in this stale case falls far below the required standard, and we therefore think the court below was clearly right in sustaining exceptions to the master's report, and dismissing the bill.

The controlling facts of the case, and the law applicable thereto, are so clearly and fully stated by the learned president of the Common Pleas that further elaboration is unnecessary. We affirm the decree on his opinion.

Decree affirmed, and appeal dismissed at the costs of appellant.

On May 28, 1890, a motion for a re-argument was refused.